## Case No. 12,088.

### ROUSE v. HAMPTON.

[4 Am. Law T. Rep. U. S. Cts. 195.]

Circuit Court, S. D. Mississippi. May, 1871.[1]

CONSTITUTIONAL LAW — MISSISSIPPI LEVEE TAXES —VALIDITY OF TAX TITLES—STAMP TAX.

[1. The Mississippi statute of November 29, 1865, creating a levee district, and imposing a specific tax of 10 cents per acre upon the land included therein, and making the act itself notice to all persons interested therein to pay the tax by a day named, in default whereof the land would be sold, was a valid exercise of the power of taxation, and not in violation of the constitution of the state or of the United States.]

[2. The sheriff and tax collector are officers of a county, within the meaning of the act of congress of July 13, 1866, amending the former statute so as to exempt from the stamp tax all official documents issued by the officers of the United States, or any state, county, town, or municipal corporation: and a tax deed made by them no longer requires a stamp.]

[3. The deed of the sheriff and tax collector for lands sold under the Mississippi act of 1865, for taxes due to the levee board, were not required to be executed and filed in the office of the probate clerk upon the day of the sale: and where they were executed soon after, and placed in possession of the clerk, and were subsequently found in the office of his successor, the presumption is that they remained there during the intermediate time.]

[4. Under the levee tax act of 1865, the first payment became due on March 1, 1867, and the last, on March 1, 1878, the whole of which must be collected before the 1st of March, 1879.]

At law.

[1] [Reversed in 22 Wall. (89 U. S.) 263.]
20FED.CAS.—80

HILL, District Judge. This action of ejectment is brought by the plaintiff against the defendant, to recover the possession of the lands described in the declaration. The defendant having confessed lease, entry, and ouster, pleads the general issue. The parties having by agreement waived a trial of the issue joined by jury, submitted the same to be determined by the court upon the proof, and judgment to be rendered thereon, as upon a verdict of a jury. From the proof made, as well by the defendant as by the plaintiff, the following facts appear: There was assessed by the provisions of the act of the legislature of the state of Mississippi, approved November 29, 1865, upon the lands mentioned and described in the pleadings, the sum of $272.90, for the year 1866, which remaining unpaid, A. B. Carson, then sheriff and tax collector for the county of Washington, in which said lands are situated, on the 11th day of April, 1867, offered said land for sale for the payment of said tax, when no other person bidding for the same, the said lands were struck off to J. R. Robinson, then treasurer of the levee board, organized under said act, and that said sale was in all things conducted as required by said act; that on the 19th and 23d days of April, 1867, said sheriff and collector executed deeds conveying to said Robinson and his successors in office as such treasurer, deeds to the lands sold by him for the non-payment of said levee tax, as belonging to Wade Hampton, and including the land in controversy, which deeds were by said sheriff placed on file in the office of the probate clerk of said county. That the said lands remained unredeemed or sold as provided in said act, until the 26th day of March, 1869, when the same were purchased by plaintiff from W. A. Haycraft, then treasurer of said board of levee commissioners and successor of said Robinson as such, for the sum of $1,783.31, being the amount of said levee tax, and all state and county tax and charges thereon, with ten per cent. added, as provided by said act, and which was then paid to said Haycraft, and his deed of conveyance executed and delivered for said lands, as provided by said law; that on the 10th day of April thereafter, Wade Hampton, Jr., son of Gen. Wade Hampton, to whom said lands had belonged when said taxes became due, applied to said Haycraft to redeem or purchase the lands sold for said tax as his father's land, and struck off to the treasurer as aforesaid, and among which was the land in controversy; that he was informed by Haycraft that to redeem the lands in this suit he would have to pay in currency the amount of taxes paid by plaintiff in this suit, with fifty per cent. added, when said Hampton expressed surprise, and took no further steps to redeem or purchase these lands, but applied for the purchase of the other lands, being informed that those lands had before been sold to plaintiff, the other lands were afterwards purchased

by him upon his said application, and the deed taken to himself. The proof does not establish an offer to redeem so as to defeat plaintiff's title so far as that ground of defence is set up, and need not be further noticed. The proof shows that the deeds executed by the sheriff and tax collector, were not stamped with the revenue stamp of the United States at the time of their execution and delivery, or until stamped upon the trial of this cause, but that the omission to do so, was not to defraud the government of its revenue, but from the fact that it was believed such stamping was not required by law as it was an official act of the sheriff. It further appears from the proof, that Wade Hampton, Sen., filed his petition in the district court of this ·district on the 29th day of December, 1868, praying to be declared a bankrupt, and was so declared, and a deed of assignment of his estate made to S. W. Ferguson as his assignee, but that he has remained in possession of said lands ever since, and is now in possession of them; that at the time he filed his petition said lands were incumbered by mortgage for an indebtedness of over $40,000, and that the equity of redemption of said Hampton has since been sold by his assignee for the consideration of $500. That most of said lands are cleared, a portion in cultivation, and that they are worth from fifty to sixty dollars per acre. The facts stated, are all that are deemed necessary to be considered in determining the question presented.

It is insisted by defendants' counsel: 1st. That the act of the legislature imposing the tax for which said sale was made, is repugnant to the constitution of the state of Mississippi, and of the United States, and contrary to the spirit of and genius of our institutions and laws. 2nd. That the deeds conveying the lands to the treasurer of the levee board, not being stamped, were illegal and void, and did not authorize the same to be filed in the office of the probate clerk, and that no title can be communicated through them. 3d. That the deeds were not executed and filed in the probate clerk's office, until some time after the day of sale, and did not remain on file for two years, before the application of Wade Hampton, Jr., to redeem. That said Hampton was the agent for his father, and his offer to redeem was equivalent to a redemption, and defeats the title attempted to be set up by plaintiff. 4th. That it would be inequitable and unjust for the plaintiff to recover such a magnificent estate for so paltry a sum. 5th. That no tax accrued, under the act of 1865, until after the 1st of March, 1867, and which was not payable until the 1st of March, 1868, so that there was no authority for the sale by the sheriff. 6th. That to enable the plaintiff to recover in this action he must recover on the strength of his own title, and not upon the weakness of that of the defendant.

These questions presented now for the first time before this, or any other court, so far as I am informed, under this act of the legislature, are of more than usual importance, not only so far as they affect the value of the property in suit, but the principles are of vast importance to the owners of lands situated in the counties embraced within the levee district created by the act in question, and have received from the ablest counsel to whom the cause has been intrusted by the parties, that research and consideration for which they are distinguished, and demand from the court the most careful examination, and, will be examined in the order stated, conceding the last proposition stated by the defendant as therein claimed.

The first question is as to the constitutionality and legality of the act of 1865 referred to. This act, unlike most of our tax laws, imposes a tax on the land and not on the owner, is a tax in rem and not in personam. The legislature themselves, by the act, impose and assess the specific tax of ten cents per acre on all the lands within the levee district created by the act, and make the act notice to all persons owning the land, or being interested therein, to come forward, and pay the tax by the day fixed or the same will be liable to sale by the sheriff and tax collector of the county in which the land is situated; to commence on the day specified and to continue from day to day until the sales are completed, and directs that if at the sale no one will bid the amount of tax due, and costs, that it shall be struck off to the treasurer of the levee board, and that a deed shall be made to said treasurer and his successors in office, which shall vest in said treasurer a title to the land so sold, for the consideration of the taxes and costs due thereon. The legal effect of this conveyance is the same as a sale and conveyance made to any other purchaser who might have purchased the same, and is declared by said act to vest in said purchaser a full and complete title in fee simple, to the land sold, and further that such deed shall be taken as evidence in any court of justice, as vesting a perfect title in the purchaser, and shall be evidence that the title of the owner or owners, as well as the claims of all persons interested therein, are thenceforth vested in the purchaser, and shall be prima facie evidence that the land was subject to the payment of the tax, for the non-payment of which the land was sold, and that all the pre-requisites of said sale had been complied with, giving, however, to the owner, or any other person interested in the land, two years to redeem said land, upon the payment of the purchase money with all subsequent taxes due thereon, and fifty per cent. per annum interest on the whole amount. The act further provides that the treasurer of the levee board may sell the same at private sale before the expiration of the time for redemption, provided he shall obtain therefor the purchase money with all accruing taxes there-

on and costs, with ten per cent. per annum interest upon the whole amount from the day of purchase, and execute a deed to the purchaser for the same. The effect or which was to vest the purchaser at such private sale with all the title vested in the treasurer, by the deed from the sheriff and tax-collector, and reserve to the owner of the land the same right of redemption which he had whilst the title remained in the treasurer of the levee board. The deed of the sheriff was to remain with the probate clerk unregistered until after the time for redemption had expired. These provisions of the act have been stated, to ascertain if we can, whether or not they are repugnant to the constitution as claimed by the defendant's counsel. The right of taxation is vested in the legislature, and is either exercised by them directly, as in this case, or through bodies created by the legislature, for local purposes, or other officers of the state in pursuance of laws passed by the legislature, and whether done directly or through the agency of others, is a legislative act, the object of which is to support government, and promote the welfare of the citizens, whether of the citizens generally, or of those of any particular locality.

The mode adopted by the legislature of this state, and maintained by its judiciary since its organization has been either for the law itself imposing the tax, to assess it, either specific, or if ad valorem, that it be ascertained in the mode provided by law, and to provide for its collection, and in default of payment to vest in the tax collector the power to distress for the taxes and costs, and make sale of the property upon which the tax is imposed, or of the property of the party to whom the assessment is made, and all of which has been done without the intervention of the judicial department of the state, the assessment made in any one of the forms having the force of a judgment, and the tax list in the collector's hands being the process whether the assessment list is made out by the collector, or otherwise. I am referred by defendant's counsel to the case of Griffin v. Mixon, 38 Miss. 424, and the numerous authorities referred to by Judge Harris in delivering the opinion of the majority of the court, to maintain the unconstitutionality of this act of the legislature. That was an action of ejectment, to recover a tract of land under a deed from the state based upon a forfeiture of the land to the state for the taxes due thereon. under the act of 1850; by the provisions of which when lands were assessed for taxes and, if the tax-collector made affidavit that he could find no personal property belonging to the owner out of which to make the taxes the return of the fact was filed in the auditor's office, and the land declared forfeited to the state without notice or an offer of sale. This act by a majority of the court was declared void as being repugnant to those provisions of the constitution which declare that private property shall not be taken for public use without compensation first had, and the provisions of the constitution of the United States which provide that the citizens shall not be deprived of life, liberty, or property, without due course of law. It is, however, conceded in the opinion of Judge Harris that the legislature may pass summary laws for the collection of its revenue, and that such has been the usage from the commencement of the state government, and that the assessor is a judicial officer of the state, and his assessment has the force of a judgment, which may be enforced by the tax-collector, as a ministerial officer. The main objection to the act of 1850 was that it deprived the owner of his land without notice or a sale.

When the questions are closely examined it will be found that the act of 1865 under consideration is not subject to the objections made to the act of 1850, for the reason that the act itself imposes and assesses the tax; the law is a public one, and all persons owning or having any interest in lands in the district embraced in this act, are presumed to know it—are presumed to know the number of acres they own, or have an interest in, and know that there are due ten cents per acre, payable on the first Monday of March in each year; the law itself gives them notice of this fact, as much so as any other mode of notice could do; it is in legal effect a judgment, pronounced by law against the land for the taxes, and no other property of the owner is liable for it; the law notifies all persons having an interest in it that unless the taxes are paid on or before the second Monday in April following it will be exposed. to sale to any person who will pay the taxes and costs, and directs that unless some one else shall bid that amount that the same shall be struck off to the treasurer of the levee board, and conveyed to him and his successors as such for the use of the levee board, giving however to the owners, and those having an interest in it, a right to redeem the lands upon the terms mentioned. within two years, and if infants or persons non compos mentis three years after becoming of age or of sound mind. This right of redemption is given not only to the legal owner, but to any one having an interest in it. This I understand by the term owner. It is difficult to perceive any objection to the provisions of this act, which might not as well be applied to any other tax law imposed, either for general or local purpose, by the legislature, at any time since the organization of the state government, and especially the act of 1858, on the same subject, which contains many of the provisions of the act of 1855, and which was declared by the high court of errors and appeals in the case of Alcorn v. Hamer, and Alcorn v. Hill, 38 Miss. 652, not to be repugnant to the constitution. After a careful examination of this question I am satisfied that this first objec-

tion to plaintiff's title is not well taken.

The second objection is that the deeds executed by the tax collector to the treasurer of the levee board, not being stamped, were illegal and communicated no title, and should not have been filed. To this objection it is sufficient to say that by the provisions of the act of congress approved July the thirteenth, 1866 [16 Stat. 98], the former law was so amended as to exempt from taxation all official documents. instruments, or papers, issued by the officers of the United States, any state, county, town, or municipal corporation. The sheriff and tax collector was an officer of the county, and the deeds were executed by him in that capacity alone, and are embraced in the exception, and did not require to be stamped.

The third objection is that the deeds were not executed and filed in the office of the probate clerk until some time after the day of sale; being unstamped, could not, and were not, legally filed, and were not, as the act requires, kept on file for two years after the sale, and before the application of Wade Hampton, Jr., to redeem; that said Hampton was the agent of his father, and that his offer to redeem was equivalent to a redemption, and defeats the title attempted to be set up by plaintiff.

I have already stated that the deeds did not require a stamp. The act does not require that the deed shall be executed upon the day of sale, or that it shall be placed in the clerk's office on that day, and there was no necessity that it should have been so done; the sheriff testifies that he did so as soon as he could, owing to the press of business. It is urged that there was no certificate showing that they were filed until put upon them by John Faun, the successor of the then clerk, and that he could not have known that they were filed at a time when he knew nothing about the office. It is true that under the testimony the certificate of Faun, that they were filed at that date, would not furnish evidence of the fact, but the sheriff testifies that he did place them in the possession of the clerk soon after their execution; they were both acknowledged before Gray the then clerk. on the 14th of May, 1867, were found in the office, and the presumption is that they remained there all the time from that time until taken out by Ferguson, attorney of defendant, to be used as evidence in this cause. The pre-requisites for vesting the title in the purchaser, as required by the act, were first, non-payment of the tax. No attempt is made to show that they were paid; had they been paid, defendant could have shown it on this trial, and any other person interested in the land may show it in any suit hereafter brought affecting plaintiff's title. Secondly, a sale of the land as provided in the act; this has been shown by the testimony of the sheriff, aside from the prima facie evidence of the deed. Thirdly, the execution and delivery of the deed, all of which has been done, as is fully established by the testimony.

The filing of the deed did not affect the title conveyed, especially as it affects the rights of the owner of the land at the time of the sale, who, as we have seen, is charged by the law itself with notice of the whole proceeding; these provisions are directions, particularly where non-compliance with them does not impair the rights and interests of the person complaining. In stating the result of the evidence I have stated that there is no evidence that Wade Hampton's son ever offered to redeem the lands; this he unquestionably had a right to do so long as he has any interest in them, but by his bankruptcy he divested himself of all interest in them. After his bankruptcy he might have purchased them as any other person, and held them free from the claim of his creditors at the time of the bankruptcy. It is true Wade Hampton, Jr., does say that he went as agent of his father to redeem this land, but it is pretty clear to my mind that he intended to purchase them; so far as the lands in controversy were concerned he could not then do so, for the reason that they had been sold; but he was not then refused the right to redeem; when informed what was necessary to be paid to make the redemption, he expressed surprise and took no further steps as to these lands, and purchased those not sold. It is said in argument that courts always look out for some point on which to defeat these tax titles; if this were admitted as a duty upon the part of the court, it would certainly be a great stretch of the judicial mind to construe these facts into an offer to redeem. I am therefore compelled to the conclusion that this third objection is not well taken.

The fourth objection is that it would be inequitable and unjust for the plaintiff to possess himself of so magnificent an estate for so paltry a sum. Whatever force there may be in this objection in a court of equity, it can have none in a court of law, dealing alone with the legal title. I may, however, be permitted to say that it is always with me a source of regret to see one man possess himself of the means of another through the courts of the country, or otherwise, without giving an adequate compensation, but such is a matter of almost constant occurrence. So far as this case is concerned, the defendant has not attempted to set up any title whatever to the land in controversy, either legal or equitable; a former ownership which is shown to have terminated, and present occupancy to which no right is attempted to be shown, is all that appears from the proof. hence this point of defence cannot be maintained.

The fifth objection is, that by the provisions of the act of 1865, there was no tax imposed until after the 1st of March, 1867, and which was not payable until the 1st of March, 1868, so that the sale made by the sheriff was without authority. When my attention was first called to this point, it seemed well taken. The provision of the 4th section of the act is: "That for the purpose of building, repairing

and constructing the levees aforesaid, and for carrying into effect the objects and purposes of securing the counties of Bolivar, Washington, and Issaquena, from overflow by the Mississippi river, there shall be, and is hereby levied, and assessed, a uniform tax of ten cents per annum on each and every acre of land in said counties, except lands held by the state in trust, or otherwise, the Chickasaw school lands, and other school lands now exempt from taxation, and except the lands lying east of Sunflower river, in Washington county, which tax shall continue for the period of twelve years, and shall be payable annually, on or before the 1st day of March in each year, from the 1st day of March, 1867, to the 1st day of March, 1879, inclusive." This at first view would seem to indicate the intention of the legislature that the imposition of the tax should not commence until the 1st of March, 1867, but the 11th section provides: "That it shall be the duty of the sheriffs of the counties of Washington, Bolivar, and Issaquena, to collect the taxes levied and assessed in their respective counties, within the time prescribed in this act." That is to say, the first amount due on or before the 1st of March, 1867, and annually thereafter, until the whole shall be paid, and shall on demand pay the amount so collected into the treasury of the board of levee commissioners, to be used in the manner provided in this act. Each of said sheriffs shall, on or before the first day of July, 1866, and thereafter on their election, execute bond, &c.; this section explains the former, and shows the first payment to be due and payable on the 1st of March, 1867, and the last due on the 1st of March, 1878, and all of which must be collected before the 1st of March, 1879, so that this objection cannot be maintained.

The sixth objection being that the plaintiff must succeed upon the strength of his own title, and not that of the weakness of the defendant, is conceded, but is unavailing when the plaintiff has made out his title, as is believed to have been done in this case.

It has been urged upon the court with zeal and ability by defendant's counsel, and many authorities have been referred to, to show that tax titles are not favored by the courts of the country, and that any technical objection will be seized upon by the courts, to prevent the title to property to pass to others for the mere taxes, and charges imposed upon the tax payer, and many of the authorities would seem to maintain the position, but to my mind these adjudications have operated to the detriment of both public and private interests. The object of general taxation is to support the government, and the object of the government, is to protect the citizen in his person and property. Although there are exceptions, the general rule is that the legislative department of the government, state and national, impose their public burthens as equally as may be, and when taxation is imposed upon persons or property for local purposes, the presumption is that it is for the promotion of the interest of those upon whom it is imposed, and such being the case, whether the taxation be general or local, it is but just and right, that all shall promptly pay the amount due, thereby making the burthens as equal as may be, and there is no good reason why these shall not be as rigidly enforced as those between individuals. About the time this sale was made much valuable land was sold for a mere trifle, under legal process, and the property of one man passed to another, without fair compensation; this was hard but could not be avoided. I am unable to discover the difference between the case of the delinquent tax payer and the defendant in the execution; the loss in each case was the result of either inability or inattention to meet the obligation.

After a careful examination of the testimony submitted, and the law applicable thereto, I am brought to the conclusion that the plaintiff has shown in himself a sufficient legal title to maintain his action, which has not been defeated, and that he is entitled to his judgment, as upon a verdict in his favor by a jury.

[NOTE. The judgment in this case was joint against the three defendants.—Wade Hampton, Wade Hampton, Jr., and J. M. Howell. A writ of error in the supreme court, sued out by Wade Hampton alone, was, upon motion of plaintiff (defendant in error) dismissed for nonjoinder of other defendants. 13 Wall. (80 U. S.) 187. Another writ of error was sued out by all the defendants, and leave was given them, in the supreme court, to amend the return day thereof. 15 Wall. (82 U. S.) 684. Upon the final hearing the court reversed the judgment below upon grounds only incidentally touched upon in the opinion above, viz., the effect of the attempt of Wade Hampton, Jr., to redeem the land on behalf of his father. The circuit court ruled that the defendant Wade Hampton, "having been adjudged a bankrupt, upon his own application, after the land was sold for taxes, had thereby ceased to be the owner of the land, and lost the right to redeem." This ruling the supreme court held to be error. Mr. Justice Clifford delivered the opinion of the court. 22 Wall. (89 U. S.) 263.]